6 A.3d 1047 (2010)
Alice Marie SCOTT
v.
COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Bureau of Driver Licensing, Appellant.
Commonwealth Court of Pennsylvania.
Submitted on Briefs May 7, 2010.
Decided August 4, 2010.
Publication Ordered October 4, 2010.
*1048 Terrance M. Edwards, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.
Regis J. McNally, Pittsburgh, for appellee.
BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FLAHERTY, Senior Judge.
OPINION BY Judge BROBSON.
Appellant Department of Transportation, Bureau of Driver Licensing (DOT), appeals from an order of the Court of Common Pleas of Allegheny County (trial court). The trial court sustained the statutory appeal of Alice Marie Scott (Licensee) from DOT's order that suspended her driving privileges for one year after she refused to submit to chemical testing based upon suspicion that she was driving while under the influence of alcohol. We reverse the trial court's order.
At a hearing before the trial court, DOT presented the testimony of Officer Gary *1049 Watkins (Officer Watkins) of the Police Department of the Borough of Castle Shannon. Officer Watkins testified that on November 15, 2008, he observed Licensee driving her vehicle into the opposing lane of traffic. (Reproduced Record (R.R.) 17a.) He stated that when he approached Licensee in her vehicle, Licensee placed gum in her mouth and that he had to knock on the vehicle's door three separate times before she responded to him. (Id.) Officer Watkins smelled alcohol on Licensee's breath, despite the fact that she had placed gum in her mouth before opening her car door. (R.R. 18a.) After administering the "Gaze Nystagmus" field sobriety test to Licensee, Officer Watkins observed several indications of insobriety, including a swayed gait while walking and swaying while standing still. Thereafter, Licensee refused any additional field tests. (R.R. 18a-19a.) Officer Watkins testified that, based upon his experience, he believed Licensee was not safe to drive and placed her under arrest for driving under the influence of alcohol. (R.R. 19a.) Officer Watkins and his patrol partner had to use force to place Licensee in the police car. (R.R. 20a.) Officer Watkins asked Licensee to submit to blood-alcohol testing, but she refused. (Id.) Officer Watkins then read Implied Consent Form DL-26 to Licensee. (Id.) Licensee then again refused to submit to chemical testing. (Id.)
Officer Watkins also testified regarding Licensee's demeanor following her arrest. His testimony indicates that Licensee was uncooperative, alert, and cognizant. (R.R. 21a-22a.) Licensee told Officer Watkins that she "wanted her son to come up and punch [Officer Watkins] in the face." (R.R. 22a.)
At the hearing before the trial court, Licensee offered into the record an April 9, 2009 deposition of her treating physician, Nenad Janicijevic, M.D., to which DOT did not object. (R.R. 30a-31a.) Dr. Janicijevic also employs Licensee as a medical assistant in his medical practice. (Id.)
Licensee testified that Officer Watkins did not tell her why he had pulled her over. That factor, she claimed, led to her "emotional state" at the time, which she described as including a pounding heart, trouble breathing, sweaty hands, fear, and nervousness. (R.R. 32a-34a.) Licensee stated that she did not remember Officer Watkins reading the implied consent warnings and that "if I had known and understood, I certainly would not have denied anything to lose my license for a whole year." (R.R. 34a-35a.) Licensee refused to answer a question from DOT's counsel as to whether she had been drinking that night. (R.R. 37a.) She also testified that she did not take a Zanax until she returned home. (R.R. 38a.)
On October 6, 2009, the trial court issued its order, sustaining Licensee's appeal. The trial concluded that Licensee established that, because of a medical conditionpanic disorder, Licensee could not make a knowing and conscious refusal to submit to chemical testing.
DOT raises the following issues in its appeal: (1) whether the trial court erred in concluding that Licensee satisfied her burden of proving that she was not capable of making a knowing and conscious decision to refuse to submit to chemical testing, and (2) whether Licensee failed to establish that alcohol consumption did not contribute to her alleged inability to make a knowing and conscious refusal to submit to chemical testing.[1] In response, *1050 Licensee, in addition to asserting that there was ample evidence to support her claim of an inability to refuse Officer Watkins' request in a knowing and conscious manner, asserts that (1) DOT did not establish that Officer Watkins adequately informed Licensee of the implied consent law, and (2) there is no evidence in the record indicating that alcohol played a role in Licensee's refusal to submit to chemical testing.
In a license suspension case where DOT suspends a license based upon a licensee's refusal to submit to chemical testing, DOT has the burden of proving the following elements: (1) a police officer arrested a licensee based upon reasonable grounds to believe that the licensee was driving under the influence of alcohol; (2) the officer asked the licensee to submit to chemical testing; (3) the licensee refused to submit to such testing; and (4) the officer provided a warning to the licensee that the licensee's failure to submit to testing would result in the suspension of his license. Banner v. Dep't of Transp., Bur. of Driver Licensing, 558 Pa. 439, 737 A.2d 1203 (1999).
Once DOT establishes that a licensee refused to submit to testing, the burden shifts to the licensee to establish that she was not physically capable of submitting to testing. Dep't of Transp., Bureau of Driver Licensing v. Ingram, 538 Pa. 236, 252, 648 A.2d 285, 293 (1994). When, as in this case, a licensee alleges that she could not make a knowing and conscious refusal because of a medical disability, the licensee must submit competent, unequivocal medical testimony to prove the licensee's inability to submit to testing.[2]Id.
DOT argues that Dr. Janicijevic's testimony was not unequivocal, and, therefore, was not competent to support the trial court's legal conclusion. In workers' compensation cases, where a claimant or employer often must offer competent, unequivocal medical testimony in order to satisfy the burden of proof, we have often repeated the notion that the question of whether expert medical testimony satisfies that requirement is a question of law subject to our review. Somerset Welding & Steel v. Workmen's Comp. Appeal Bd. (Lee), 168 Pa.Cmwlth.78, 650 A.2d 114, 117 (1994). In such cases, we review the testimony as a whole and may not base our analysis on a few words taken out of context. Id.
In Barbour v. Department of Transportation, Bureau of Driver Licensing, 557 Pa. 189, 732 A.2d 1157 (1999), our Supreme Court considered the question of what evidence constitutes competent medical evidence, such as would support a conclusion that a licensee has a condition unrelated to the consumption of alcohol that makes the licensee's refusal to submit to chemical testing unknowing. In that case, a licensee sustained a serious head injury in an accident while he was driving. A medical expert, who also testified by deposition, likened the injury to a gunshot wound. The doctor testified to a reasonable degree of medical certainty that the injury from the accident probably rendered the licensee unconscious and that the licensee suffered *1051 from amnesia after the accident. Consequently, the licensee would not have been able to comprehend questions posed to him immediately after the accident. The doctor acknowledged that, when he examined the licensee six to seven hours after the accident, licensee's ingestion of alcohol contributed to his cognitive impairment. Nevertheless, the doctor testified that, based upon his experience, a person suffering from the injury the licensee had sustained would not be able to provide a knowing refusal of chemical testing.
The Supreme Court concluded that this Court had improperly increased the licensee's burden of proof by requiring a medical expert's opinion to be certain and without doubt. Instead, a medical expert need testify only within a reasonable degree of medical certainly that a medical condition or injuries made the licensee "incapable of rendering a conscious and knowing refusal." Barbour, 557 Pa. at 195, 732 A.2d at 1160-61.
With these legal standards in mind, we review Dr. Janicijevic's testimony to consider whether it is equivocal. We quote pertinent parts of his testimony below:
Q. Did Alice Scott come to you on November the 15th and describe the situation that she faced in the police station the previous evening?
A. Yes, she did, yeah.
Q. And what did she describe?
A. Well, she described that she was stopped by the police, and she got nervous and anxiety, and I guess she got in quarrel with them. I don't know which kind of details they are. But my understanding is that she had the panic attacks, and as a result of this panic attacks, she was not able basically to control what she was telling, and that resulted that she was not able to properly, to properly think or understand what she was asked to do.
. . . .
Q. Now. Based on the information that you have from Alice Scott and otherwise, Doctor, and based on your experience and your medical expertise, can you state to a reasonable medical certainty whether Alice Scott was capable of making a knowing and conscious refusal or consent to the police officer's request that she submit to a blood test. . . ?
A. Well, my understanding of her illness, I feel that there is a probability that, due to anxiety, she was not capable of making conscience refusal of police officer's request to submit to the blood test because I don't think that she was able to comprehend mentally what she was asked, what kind of consequences that result. Because, you see, what panic disorder is, panic attacks, this attacks of, intense attacks of anxiety, and they manifested with multi-faceted symptoms.
(R.R. 59a-61a.) Dr. Janicijevic then described the numerous symptoms that can accompany panic attacks, including chest discomfort, shortness of breath, stomach distress, sweating, hot flashes, light headedness, unsteady gait, fear, delusions, cognition of reality, and lack of behavioral control. The colloquy in the deposition then continued as follows:
Q. And has Alice Scott exhibited the symptoms you described during the course that she was your patient?
A. Yeah, yes. She had, she had similar symptoms, which they observed that she has a problem. That's why she's treated here.
Q. And did she describe having the, some of those symptoms that night at the police station?
A. Some of those symptoms, correct.

*1052 Q. And with respect to her ability, is it your opinion that she could not give consent or make a knowing or conscious refusal to a reasonable degree of medical certainty?
A. Reasonable medical certainty, talking about probabilities, okay.
Q. Yes.
A. It is my opinion that if she would have a panic attacks and anxiety, she could have not be able to understand consciously.
(R.R. 62a (emphasis added).)
Upon a review of his deposition testimony, we agree with DOT that Dr. Janicijevic's testimony was equivocal on the question of whether Licensee, in fact, suffered a panic attack the evening of her arrest, which prevented her from making a knowing and conscious refusal to submit to chemical testing. Dr. Janicijevic clearly testified that Licensee suffered from panic attacks. He also clearly testified that if Licensee had a panic attack the night she was arrested, she would have difficulty understanding Officer Watkins' request to submit to chemical testing. Finally, Dr. Janicijevic testified that Licensee's symptoms on the evening of her arrest, as Licensee described them to him, were consistent with a panic attack. But although he testified that, based upon his understanding of Licensee's illness, there was a "probability" that, because of anxiety, she was not able to make a knowing or conscious refusal, Dr. Janicijevic did not testify with a reasonable degree of medical certainty that Licensee, in fact, had a panic attack the night of her arrest.[3] Based on this record, then, we must conclude that Licensee failed to establish, through unequivocal expert medical testimony, that she suffered from a panic attack the evening of her arrest, which prevented her from making a knowing and conscious refusal to submit to chemical testing.[4]
As a counter to DOT's arguments on appeal, Licensee argues that DOT failed to establish that Officer Watkins adequately informed Licensee of the implied consent laws. Licensee argues that, under the circumstancesnamely, Licensee's apparent *1053 irrational behaviorOfficer Watkins was required to explain the implied consent law requirements to her either in more detail or repeatedly. Licensee asserts that in every case in which courts have found the provided warnings to be adequate, the police officer or officers involved made a "bona fide" effort to ensure that the licensee was actually warned of the consequences of a refusal. Licensee does not detail the extent to which a police officer must go to make sure that a licensee understands the implied consent law, but asserts that Officer Watkins' effort in this case was insufficient because of Licensee's behavior.
None of the cases upon which Licensee relies definitively provide that an officer requesting a licensee to submit to chemical testing has a duty to repeat the implied consent warnings. By contrast, Officer Watkins' description of his actions that night reveals that he read Licensee the implied consent warnings. When Licensee said she wanted a lawyer, Officer Watkins explained that under the implied consent law, she had no right to an attorney for the purpose of chemical testing. (R.R. 21a.) Therefore, we reject Licensee's argument that Officer Watkins failed to provide Licensee with an adequate briefing or warning with respect to the implied consent law.
Based upon the foregoing, we conclude that the trial court erred in concluding that Licensee satisfied her burden to prove that she could not make a knowing or conscious refusal to submit to chemical testing. Accordingly, we reverse the trial court's order sustaining Licensee's statutory appeal and reinstate DOT's suspension of Licensee's driving privileges.

ORDER
AND NOW, this 4th day of August, 2010, the Order of the Court of Common Pleas of Allegheny County is REVERSED.
NOTES
[1] This Court's standard of review of a trial court's order sustaining a licensee's statutory appeal of a suspension of driving privileges is limited to considering whether factual findings are supported by competent evidence, and whether the trial court erred as a matter of law or abused its discretion. Todd v. Dep't of Transp., Bureau of Driver Licensing, 555 Pa. 193, 198, 723 A.2d 655, 658 (1999).
[2] The trial court apparently concluded that DOT had satisfied its initial burden, because otherwise it would not have had to address Licensee's affirmative defense.
[3] This conclusion is supported by the Dr. Janicijevic's own medical reports, which are part of the record. In those reports, Dr. Janicijevic nowhere states that he believed that Licensee had a panic attack that night. Rather, he states that "[i]t is my understanding" that Licensee had a panic attack. He also stated in those reports that based "upon these facts related to me by [Licensee] and based upon her medical condition, it is my opinion to a reasonable degree of medical certainty that [Licensee] was incapable of making a knowing and conscious refusal or consent to a . . . request that she submit to a blood test." Although the doctor used the words "within a reasonable degree of medical certainty," he does not indicate the "facts" that Licensee related to him. Consequently, the inference we draw from the initial phrase "it is my understanding" is that the doctor's opinion was based on statements Licensee made to him, indicating that she believed she had a panic attack that night. (R.R. 84a-85a.)
[4] DOT argues that, in order for Licensee to sustain her burden of proof, Dr. Janicijevic was required to testify that any alcohol Licensee drank that night could not have been a contributing factor to her alleged inability to make a knowing and conscious refusal. Because we agree with DOT that Dr. Janicijevic's testimony was equivocal on the question of whether Licensee actually suffered a panic attack at the time of her arrest, we need not address this issue. DOT further argues that, because Licensee submitted only deposition testimony of her treating physician, the trial court's credibility determinations and the weight the trial court assigned to this evidence are not binding on this Court. DOT argues that we may evaluate Dr. Janicijevic's deposition testimony independently and that we are not bound by the factual findings the trial court made based upon that deposition testimony. Based upon our conclusion above that Dr. Janicijevic's testimony was equivocal, we need not address this argument either.