Lynette A. KOLLAR

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 16, 2010.

Decided Nov. 3, 2010.

Terrance M. Edwards, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

Mark M. Mack, Kingston, for appellee.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) that reversed DOT's action in suspending the operating privileges of Lynette A. Kollar (Licensee) for refusing to submit to chemical testing. We reverse the order of the trial court and reinstate DOT's one-year suspension.

A *de novo* hearing was held on February 8, 2010. Officer Paul Polemitis testified that he was dispatched to a two car accident on October 17, 2009. He spoke to Licensee who was sitting in her vehicle at the time he arrived at the scene. He detected the smell of alcohol from inside the vehicle. Per Officer Polemitis, Licensee conceded she consumed alcoholic beverages earlier that day. According to Officer Polemitis, Licensee appeared intoxicated. He did not observe any injuries.

Officer Paul Crawford testified that he met with Licensee at the hospital following the accident and advised her that she was going to be placed under arrest for suspicion of driving under influence of alcohol (DUI). At that time, he did not observe any injury. He requested that she submit to a blood test and read her the "warnings form" concerning the blood test. Reproduced Record (R.R.), p. 16a. Licensee remained silent following Officer Crawford's request. Officer Crawford explained the blood test again and made another request that Licensee submit to the same. After receiving no response, the officer completed the form indicating Licensee refused to submit to chemical testing.

Licensee presented the testimony of Lawrence Guzardi, M.D., an emergency physician and medical toxicologist, who

took a history from Licensee, reviewed her medical records, and read the police report. According to Dr. Guzardi, Licensee sustained two lacerations requiring sutures, rib contusions, and a concussion as a result of the October 17, 2009 motor vehicle accident. There was also a loss of consciousness. He stated that as a result of a concussion, one typically may experience confusion, difficulty understanding, difficulty reasoning, and disorientation. Dr. Guzardi opined that Licensee's injuries impacted Licensee's ability to comprehend an officer's request that she submit to chemical testing and the consequences of her refusal. He could not rule out alcohol as also playing a factor.

Based on the evidence presented, the trial court sustained Licensee's appeal of DOT's determination suspending her operating privileges for one year. In so ruling, the trial court relied on the testimony of Dr. Guzardi concerning the extent of Licensee's injuries as a result of the accident as well as those injuries' impact on her ability to understand Officer Crawford's request to submit to a blood test and the consequences of her refusal. This appeal followed.[1]

DOT argues on appeal that the trial court erred in finding Licensee satisfied her burden to establish that her refusal to submit to chemical testing was not knowing or conscious. According to DOT, Licensee was unable to meet her burden inasmuch as her medical expert's opinion was equivocal. Moreover, it posits that Dr. Guzardi failed to rule out alcohol as a contributing factor to her inability to understand Officer Crawford's request or the consequences of her refusal.

The Implied Consent Law set forth in Section 1547 of the Vehicle Code, 75 Pa. C.S. §§ 101–9805, provides, in relevant part:

(b) SUSPENSION FOR REFUSAL.—

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months

. . .

75 Pa.C.S. § 1547.

To sustain a suspension of operating privileges under Section 1547 of the Vehicle Code, DOT must establish that the licensee: (1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 737 A.2d 1203 (1999). *See also Mondini v. Department of Transportation, Bureau of Driver Licensing*, 875 A.2d 1192 (Pa.Cmwlth.2005). Once DOT meets this burden, the licensee must then establish that the refusal was not knowing or conscious or that the licensee was physically unable to take the test. *Pappas v. Department of Transportation, Bureau of Driver Licensing*, 669 A.2d 504

---

1. This Court's standard of review is limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed or whether the trial court's determinations dem-

onstrate a manifest abuse of discretion. *Riley v. Department of Transportation, Bureau of Driver Licensing*, 946 A.2d 1115 (Pa.Cmwlth. 2008)

(Pa.Cmwlth.1996). The determination of whether a licensee was able to make a knowing and conscious refusal is a factual one that is to be made by the trial court. *Barbour v. Department of Transportation, Bureau of Driver Licensing,* 557 Pa. 189, 732 A.2d 1157 (1999). Such factual finding must be affirmed so long as sufficient evidence exists in the record to support the finding. *Id.* at 193, 732 A.2d at 1160.

■■■ A driver's self-serving testimony that she was incapable of providing a knowing and conscious refusal of chemical testing is insufficient to meet the licensee's burden of proof. *Ostermeyer v. Department of Transportation, Bureau of Driver Licensing,* 703 A.2d 1075, 1077 (Pa. Cmwlth.1997). Medical testimony is generally required in order to establish a licensee was unable to provide a knowing and conscious refusal to submit to chemical testing.[2] *Barbour,* 557 Pa. at 193, 732 A.2d at 1160; *See also Maletic v. Department of Transportation, Bureau of Driver Licensing,* 819 A.2d 640 (Pa.Cmwlth.2003); *McDonough v. Department of Transportation, Bureau of Driver Licensing,* 152 Pa. Cmwlth. 384, 618 A.2d 1258 (1992). The medical expert must rule out alcohol as a contributing factor to the licensee's inability to offer a knowing and conscious refusal in order to satisfy the licensee's burden. *Zwibel v. Department of Transportation, Bureau of Driver Licensing,* 832 A.2d 599 (Pa.Cmwlth.2003); *see also Dailey v. Department of Transportation, Bureau of Driver Licensing,* 722 A.2d 772 (Pa. Cmwlth.1999). Indeed, if the motorist's inability to make a knowing and conscious refusal of testing is caused in whole or in part by consumption of alcohol, the licensee is precluded from meeting her burden as a matter of law. *DiGiovanni v. Department of Transportation, Bureau of Driver Licensing,* 717 A.2d 1125 (Pa.Cmwlth. 1998).

■■■ To be deemed competent, a medical opinion must be offered that is within a reasonable degree of medical certainty. *Barbour,* 557 Pa. at 194, 732 A.2d at 1160. Medical testimony, however, will be deemed incompetent if it is equivocal. *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College),* 794 A.2d 443 (Pa.Cmwlth.2002). A medical opinion is equivocal if it is merely based on possibilities. *Campbell v. Workers' Compensation Appeal Board (Pittsburgh Post Gazette),* 954 A.2d 726 (Pa.Cmwlth.2008). The opinion of a medical expert must be viewed as a whole. *American Contracting Enters., Inc. v. Workers' Compensation Appeal Board (Hurley),* 789 A.2d 391 (Pa.Cmwlth. 2001).

■■■ To sustain a suspension of operating privileges under Section 1547 of the Vehicle Code, DOT is normally required to establish that the licensee was arrested for DUI, refused, when asked, to submit to chemical testing, and was warned that refusal might result in a license suspension. *Banner; Mondini.* At issue in this appeal is whether Licensee met her burden to establish that her refusal was not knowing or conscious. *Pappas.* Neither officer observed any injuries when they met with Licensee following the accident. Moreover, Licensee did not testify in this matter. Therefore, Licensee was required to present competent medical testimony to show that she was unable to provide a knowing and conscious refusal to submit to chemical testing. *Barbour; Maletic; McDonough.*

Dr. Guzardi was required to offer his opinion within a reasonable degree of med-

---

**2.** Such medical testimony will not be required, however, when severe, incapacitating injuries are obvious. *Ostermeyer,* 703 A.2d at 1077.

ical certainty. *Barbour.* His opinion must be deemed unequivocal to preclude a finding that his opinion is incompetent. *Kurtz.* Moreover, Dr. Guzardi was required to rule out alcohol as a contributing factor to Licensee's inability to offer a knowing and conscious refusal to submit to chemical testing. *Zwibel; Dailey; DiGiovanni.* When Dr. Guzardi testified concerning Licensee's injuries and their impact on Licensee's ability to give a knowing and conscious refusal of chemical testing, the following dialogue took place:

> A: [Licensee's injuries] would have been a significant factor in her inability to understand and fully comprehend somebody talking to her at the time of the submission of this form to her, understanding the significance of it, understanding and comprehending the difficulty—what this meant, and understanding the events related to that refusal to submit to a blood alcohol test.
>
> Q: Well, obviously she admitted to the police she had imbibed and she had taken some alcohol before the accident. Would that have possibly affected her ability to make a decision?
>
> A: Yes, that also *could have been a factor.* We don't know, obviously.
>
> Q: Would you have an opinion, based upon reasonable medical certainty, being a medical toxicologist and an emergency room physician working with these types of injuries, which one of these factors would have affected her more with regards to making a decision?
>
> A: I believe the concussion was *more significant,* and I base that on two different factors. One is—well, three different factors. One is what Dr. Grasso thought. Dr. Grasso was the physician who saw her in close proximity to the events, and he felt that she had a concussion.

No. 2, her failure to remember what happened—what transpired in the emergency department and her obvious confusion or inability to recollect, to understand what had occurred in the emergency department as documented by both herself and in the police reports.

And No. 3, my own impression, based upon what I've seen in Dr. Grasso's records who was aware that she had—was likely aware that she had been drinking was that—that she had a concussion and he felt that—well, he diagnosed concussion, so it's my opinion, also.

R.R. at 18a–19a.

On cross-examination, the following dialogue took place:

> Q. And your opinion is—is it within a reasonable degree of medical certainty she was incapable of making a knowing and conscious decision?
>
> A. It is my opinion that based upon the information that I reviewed and the diagnosis of concussion with lacerations, loss of consciousness, rib contusions, it is my opinion *within a reasonable degree of medical certainty, more likely than not* that the cause of her inability to— she had the inability to understand and fully comprehend the information presented to her and therefore her decision to refuse that test was not knowing and voluntary because of her medical condition.
>
> Q. But you can't rule out alcohol as a contributing factor?
>
> A. I can not.

R.R. at 20a. (Emphasis added).

██ This Court must review a medical expert's opinion as a whole. *Hurley.* We are left with no choice but to find Dr. Guzardi's opinion equivocal. Dr. Guzardi explained that it was his opinion "within a

reasonable degree of medical certainty" that Licensee's injuries, particularly her concussion, prevented her from giving a knowing and conscious refusal in this case. R.R. at 19a, 20a. Dr. Guzardi defined what he meant by the phrase "within a reasonable degree of medical certainty" by stating he felt Licensee's injuries "more likely than not" caused Licensee's inability to give a knowing and conscious refusal to submit to chemical testing. R.R. at 20a. This is particularly troubling as the phrase "more likely than not" can be interpreted as nothing more than a 51% chance that a fact or circumstance existed. A medical opinion is equivocal if it is merely based on possibilities. *Campbell.* Dr. Guzardi's statement tends to show his opinion is based on nothing more than possibilities.

Elsewhere in Dr. Guzardi's testimony, Dr. Guzardi conceded that he could not rule out Licensee's alcohol consumption as a contributing factor to Licensee's inability to understand Officer Crawford's request that Licensee submit to chemical testing or comprehend the consequences of her refusal. Indeed, in comparing Licensee's alcohol consumption with Licensee's injuries, Dr. Guzardi stated only that the "more significant factor" leading to her inability to give a knowing and conscious refusal was her resultant injuries. R.R. at 19a. Dr. Guzardi did not rule out alcohol as a contributing factor to Licensee's inability to offer a knowing and conscious refusal to submit to chemical testing as required by *Zwibel, Dailey,* and *DiGiovanni.* Licensee, as a matter of law, did not satisfy her burden of proof. *Pappas; DiGiovanni.*

This Court acknowledges that in *Barbour,* the Supreme Court found the licensee met his burden of proof to show his physical injuries sustained in a motor vehicle accident rendered him incapable of making a knowing and conscious refusal to submit to chemical testing. The licensee present-

ed a medical expert, Dr. Celin, who stated the driver sustained serious injury as a result of the incident, including a blunt object penetrating his face through the nasal cavity and into the rear of his right eye socket. Dr. Celin likened the licensee's injuries to a gunshot wound, explained that the licensee suffered from amnesia following the incident, and was likely rendered unconscious following the accident. The Court pointed out that Dr. Celin explained that part of the licensee's impairment was due to alcohol ingestion. It concluded, however, that Dr. Celin's testimony supported a finding that with or without the licensee's alcohol ingestion, licensee's facial trauma would have prevented licensee from giving a knowing waiver of chemical testing.

Contrary to the facts in *Barbour,* Dr. Guzardi was not as adamant that Licensee's injuries would have rendered Licensee incapable of offering a knowing and conscious refusal regardless of any alcohol consumption. He did not rule out alcohol as the cause of any inability Licensee may have had to understand and process the request made by Officer Crawford to submit to chemical testing. Rather, Dr. Guzardi engaged in a balancing test as to whether Licensee's alcohol consumption or her injuries sustained in the motor vehicle accident were the more significant factor leading to her inability to make a knowing and conscious refusal. Indeed, Dr. Guzardi opined only that Licensee's injuries, mainly her concussion, were "more likely than not" the cause of her failure to perceive the events around her. R.R. at 20a. This is an equivocal opinion at best. *Campbell. Barbour* is distinguishable.

DOT further argues that in order to meet her burden that she was unable to make a knowing and conscious decision to refuse chemical testing, Licensee was

required to testify in this matter.[3] It submits that a licensee should always be required to testify concerning the circumstances resulting in a refusal to submit to chemical testing "even if that testimony amounts to nothing more than 'I cannot remember why.'" Appellant's Reply brief, p. 9. We have found that the evidence Licensee did submit was equivocal, incompetent, and otherwise incapable of supporting her burden of proof in this matter to show she was unable to make a knowing and conscious decision to refuse chemical testing. As there is no competent evidence of record that could be used to satisfy Licensee's burden, this issue is deemed moot.

■ Licensee, in brief, suggests that DOT failed to satisfy its initial burden under *Banner* and *Mondini* to show that she (1) was arrested for driving under influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) *was warned that refusal might result in a license suspension.* Specifically, she contends that she asked Officer Crawford to allow her to make a phone call before she could agree to submit to a blood test. That request was refused, per Licensee, without explanation that there is a distinction between the rights afforded in regard to criminal charges under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16

L.Ed.2d 694 (1966), and the rights applicable under the Implied Consent Law.[4]

■ The trial court made no findings regarding whether DOT satisfied its initial burden of proof in this matter. It sustained Licensee's appeal of DOT's action in suspending Licensee's operating privileges based exclusively on the testimony of her medical expert. Typically, whether a licensee can establish that her refusal to submit to chemical testing was knowing or conscious is an issue that needs to be addressed only if DOT satisfied its initial burden. *Pappas.* The trial court's findings, however, appear limited with good reason. In Licensee's pre-trial submission to the trial court, she asserted only that as a result of the injuries sustained in her motor vehicle accident, "she was unable to make a knowing and conscious decision to refuse." R.R. at 8a. She did not make any argument that would impact DOT's initial burden. She did not raise any issue with regard to a proper appraisal of her rights in terms of whether she was permitted to make a phone call prior to agreeing to submit to chemical testing. Issues not raised before the trial court cannot be raised for the first time on appeal. *Wert v. Department of Transportation, Bureau of Driver Licensing,* 821 A.2d 182 (Pa. Cmwlth.2003).

---

**3.** In her reply brief, Licensee alleges that part of the reason she did not testify was that her concomitant criminal trial had not yet resolved itself. She claims she was simply protecting her Constitutional right against self-incrimination. Conducting an administrative hearing prior to the disposition of a criminal case arising from the same event is not a per se violation of the defendant's privilege against self-incrimination. *Commonwealth v. Lutz,* 152 Pa.Cmwlth. 377, 618 A.2d 1254 (1992). A licensee is required to specifically show to the trial court how her privilege against self-incrimination would be prejudiced by testifying at the suspension hearing.

*McDonough v. Commonwealth,* 152 Pa. Cmwlth. 384, 618 A.2d 1258 (1992). As in *McDonough,* Licensee never took the witness stand and was never asked an incriminating question. Any claim that her right against self-incrimination would have been prejudiced is purely speculative.

**4.** A licensee is not entitled to *Miranda* warnings before deciding whether to submit to a request for chemical testing in order for DOT to suspend her driving privileges. *Witmer v. Department of Transportation, Bureau of Driver Licensing,* 880 A.2d 716 (Pa.Cmwlth.2005).

## ORDER

AND NOW, this 3rd day of November, 2010, the Order of the Court of Common Pleas of Luzerne County is reversed. The Department of Transportation, Bureau of Driver Licensing's one-year suspension of Lynette A. Kollar's operating privileges is hereby reinstated.