IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melissa Kaiser                    :
                                      :
          v.              :
                                        :
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Driver Licensing,      :  No. 2330 C.D. 2015
                    Appellant  :  Submitted: July 8, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI             FILED: August 3, 2016


The Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) sustaining the appeal of Melissa Kaiser (Licensee) from an eighteen-month suspension of her operating privileges for failing to submit to chemical testing. For the reasons that follow, we reverse the order of the trial court and reinstate Department's suspension.[1]

---

[1] Licensee was precluded from filing a brief because she failed to submit a brief to this Court by the required deadline.

**I.**

On January 25, 2015, Licensee was stopped by Officer Brian Kutrufis (Officer Kutrufis) of the Ohio Township Police Department after he observed Licensee driving erratically. Believing that Licensee was under the influence of alcohol, Officer Kutrufis placed Licensee under arrest, explained the implied consent law and asked Licensee to provide a blood sample. She refused.

By official notice dated February 10, 2015, the Department notified Licensee that her operating privileges were suspended for a period of eighteen months pursuant to Section 1547(b)(1)(ii) of the Vehicle Code[2] for refusing to

---

[2] 75 Pa.C.S. §1547(b)(1)(ii). That provision of the Code provides, in pertinent part, as follows:

> (b) Suspension for refusal.—
>
> (1) If any person placed under arrest for a violation of section 3802 [driving under influence of alcohol or controlled substance] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>
> . . .
>
> (ii) For a period of 18 months if any of the following apply:
>
> . . .
>
> (B) The person has, prior to the refusal under this paragraph, been sentenced for:
>
> (I) an offense under section 3802.

**(Footnote continued on next page…)**

submit to chemical testing. Not disputing that the Department made out its *prima facie* case,[3] Licensee appealed her suspension to the trial court contending her refusal to submit to testing was not knowing and conscious.

Before the trial court, Officer Kutrufis testified that during the traffic stop, Licensee did not appear disoriented or not cognizant of what was occurring, and never told him that she did not understand the implied consent warnings. He testified that when he asked her to submit to a blood test, Licensee first responded by stating "what does it matter," and then stated "nope." (Reproduced Record (R.R.) at 14a.)

Licensee did not testify but offered the deposition testimony of Rebecca M. Wiegers, Ph.D. (Dr. Wiegers), who holds a doctorate degree in

---

**(continued…)**

Licensee was previously convicted on January 31, 2007, for violating Section 3802(c) of the Vehicle Code, 75 Pa.C.S. §3802(c).

[3] In an appeal of a license suspension based on a licensee's refusal to submit to chemical testing, the Department has the burden of proving:

> that the licensee: (1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.

*Kollar v. Department of Transportation, Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010) (citations omitted).

3

developmental psychology, to show that she was incapable of making a knowing decision not to submit to testing.

Dr. Wiegers testified that on June 8, 2014, Licensee was the passenger on a motorcycle when it was rear-ended, she was thrown twenty-five feet in the air, the driver of the motorcycle landed on top of her and she sustained a severe concussion. She admitted that Licensee was not able to provide her with any medical records and admitted she never reviewed any of Licensee's medical records. Dr. Wiegers also acknowledged that Licensee admitted to consuming "a couple of drinks" on the night in question and that she was also taking the prescription drug Suboxone for her pain. (R.R. at 30a.) Based on her neuropsychological assessment and testing, Dr. Wiegers opined that Licensee suffered from persistent post-concussion syndrome that affected Licensee's ability to make a knowing, voluntary and intelligent decision with respect to chemical testing.

Finding the testimony of Dr. Wiegers credible, competent and unequivocal, the trial court found that Licensee's medical condition of post-concussion syndrome alone, without intoxication, rendered her incapable of making a knowing or conscious decision regarding chemical testing. Because Licensee met her burden of proof, the trial court sustained Licensee's appeal of the Department's determination suspending her operating privileges for eighteen months. This appeal followed.[4]

---

[4] Our standard of review of a trial court's order sustaining a licensee's statutory appeal of a suspension of driving privileges is limited to whether the trial court erred as a matter of law or
**(Footnote continued on next page…)**

4

## II.

Because it was not disputed that the Department met its initial burden of proof, the burden shifted to Licensee to demonstrate that her refusal was not knowing or conscious. *Pappas v. Department of Transportation, Bureau of Driver Licensing*, 669 A.2d 504 (Pa. Cmwlth. 1996). "Where, as here, there is no obvious medical inability to perform the test, a licensee must prove that [s]he was incapable of making a knowing and conscious refusal through competent and unequivocal medical testimony." *DiGiovanni v. Department of Transportation, Bureau of Driver Licensing*, 717 A.2d 1125, 1126-27 (Pa. Cmwlth. 1998) (citation omitted). In order to satisfy a licensee's burden, the medical expert must also rule out alcohol as a contributing factor to the licensee's ability to offer a knowing and conscious refusal of the chemical testing. *Kollar*, 7 A.3d at 340. Indeed, "if a [licensee]'s inability to make a knowing and conscious refusal of testing is caused, in whole or in part, by the consumption of alcohol, the [licensee]'s affirmative defense fails." *Gombar v. Department of Transportation, Bureau of Driver Licensing*, 678 A.2d 843, 847 (Pa. Cmwlth. 1996).

The Department contends that Dr. Wiegers' testimony was not competent to support the trial court's legal conclusion[5] because she admitted that

---

**(continued…)**

abused its discretion, or whether factual findings are supported by competent evidence. *Scott v. Department of Transportation, Bureau of Driver Licensing*, 6 A.3d 1047, 1049 (Pa. Cmwlth. 2010).

[5] Whether a licensee was able to make a knowing and conscious refusal of chemical testing is a factual determination to be made by the trial court, and must be affirmed so long as the record contains sufficient evidence to support the finding. *Kollar*, 7 A.3d at 340 (citing **(Footnote continued on next page…)**

5

Licensee's consumption of alcohol and prescription drugs contributed to her inability to make a knowing refusal to submit to chemical testing. The question then is whether Dr. Wiegers' testimony, taken as a whole, establishes that Licensee's refusal of chemical testing was not caused, in whole or in part, by chemical factors that led to her being asked to submit to the chemical testing.

When Dr. Wiegers testified on direct examination concerning Licensee's post-concussion syndrome and its impact on Licensee's ability to give a knowing and conscious refusal of chemical testing, the following exchange took place:

> Q. I don't want to put words in your mouth, but is it your belief to a reasonable degree of medical certainty that the persistent postconcussive syndrome would affect her ability, especially on the day of, especially including the very circumstances surrounding her, would that affect her ability to make a knowing, voluntary, intelligent decision?
>
> A. Yes, it would.

(R.R. at 33a.)

---

**(continued…)**

*Barbour v. Department of Transportation, Bureau of Driver Licensing*, 732 A.2d 1157, 1160 (Pa. 1999)).

However, on direct examination, Dr. Wiegers was also asked to describe Licensee's mental state at the time of the refusal and responded as follows:

> A. She told me she was in a panic because she has three young children at home, no support or very few support services, and she was petrified that if they did blood testing, found painkillers, they would not ask any questions and she would be immediately put into jail. She panicked.
>
> . . .
>
> Her frontal lobes were zapped by everything that had gone on, including the alcohol, the painkillers that she was on, plus the concussion. She panics, and all she can think of is I cannot go to jail.

(R.R. at 31a-32a.) Such testimony not only fails to rule out the effects of alcohol and painkillers on Licensee's decision-making ability at the time of the arrest, it specifically indicates that these were contributing factors.

> On cross-examination, Dr. Wiegers further testified:
>
> Q. So is it your opinion that her taking the Suboxone on that date would have also played a role in impairment?
>
> A. Exactly. The alcohol would have been magnified by the Suboxone, and she was clueless.
>
> . . .
>
> Q. So if I understand you correctly, all of these factors – the pain, the postconcussive syndrome symptoms, the

7

Suboxone, and the alcohol consumption – all played a role in this impairment of her cognitive function?

A. Right. . . . She also, you know, took a couple of drinks . . . to take the edge off. So yeah, it's just too many factors all at once with a clueless person who didn't know she had a concussion.

. . .

Q. So do you have an opinion as to whether she would have, due to all of these factors that you have mentioned, that she would have been able to process and understand the warnings?

A. No. She didn't take anything. The only thing she said was going through her mind was I got to get back to my kids. I can't be put in jail. She just assumed she would be put immediately into jail as soon as they did the blood test while they waited to find out what was going on. . . .

Q. But it's your opinion that it was due to this combination of factors that she wouldn't have been able to process?

A. Right, exactly.

(R.R. at 44a; 46a; 49a-50a.) Dr. Wiegers' testimony clearly indicates that she believes Licensee's alcohol and Suboxone consumption played a part in the impairment of Licensee's cognitive function at the time of the refusal.

The trial court placed great emphasis on the following exchange which occurred on re-direct:

Q. I asked you to make a medical conclusion based on a variety of factors all coming together, and [Department

8

Counsel] also asked you about a similar variety of factors when factoring alcohol in. Could the persistent postconcussive syndrome and all of the varying effects alone all by itself, absent any other factor and absent alcohol, absent the stress that we talked about, absent all that, just the syndrome alone and the working memory and the attention deficit, could that alone, to a reasonable degree of medical certainty, affect her ability to make a knowing, voluntary, and intelligent decision?

A. Definitely. . . .

(R.R. at 54a.) However, this is not the end of the exchange. The trial court omits the fact that Dr. Wiegers went on to state, "[e]verything else made it worse," (R.R. at 55a.), and ignores her testimony regarding the contributing factors to her refusal.

Because Dr. Wiegers admitted that alcohol was a contributing factor to Licencee's refusal to submit to testing, her testimony is not legally sufficient to establish that Licensee's post-concussion syndrome alone prevented her from making a knowing and conscious refusal to submit to chemical testing. Accordingly, the order of the trial court is reversed and the Department's suspension of Licensee's driving privileges is reinstated.

DAN PELLEGRINI, Senior Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melissa Kaiser                  :

                            :

        v.                :

                            :

Commonwealth of Pennsylvania,    :
Department of Transportation,     :
Bureau of Driver Licensing,       :
             Appellant   :  No. 2330 C.D. 2015

# **O R D E R**

AND NOW, this 3rd day of August, 2016, the order of the Court of Common Pleas of Allegheny County at No. S.A. 15-182, dated October 27, 2015, is hereby reversed.

_____
DAN PELLEGRINI, Senior Judge