# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Satinder Pal Singh, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 133 C.D. 2018 |
| | : | SUBMITTED: December 13, 2018 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## <u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                     **FILED:  January 22, 2019**

Licensee, Satinder Pal Singh, appeals from an order of the Court of Common Pleas of Northampton County (trial court) denying his statutory appeal and reinstating the Department of Transportation, Bureau of Driver Licensing's (Department) imposition of a one-year suspension of his operating privilege for refusing to submit to chemical testing pursuant to Section 1547(b)(1)(i) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b)(1)(i).[1]  We affirm.

---

[1] Commonly referred to as the Implied Consent Law, Section 1547(b)(1)(i) provides, in pertinent part, as follows:

> (1) If any person placed under arrest for violation of section 3802 [relating to driving under influence of alcohol or controlled substance (DUI)] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice

In April 2017, a police officer arrested Licensee for suspected driving under the influence (DUI) in violation of Section 3802 of the Code, 75 Pa.C.S. § 3802. After administering several field sobriety tests and a portable breath test,[2] the officer transported Licensee to the Bethlehem DUI Center. Upon arrival, Licensee complained that his blood-sugar level was off. Consequently, the officer had an ambulance dispatched to the DUI Center. After testing, the responders determined that Licensee's blood-sugar level was elevated but that he was in no immediate danger. At that time, Licensee refused to go to the hospital for his elevated blood sugar. In any event, personnel at the DUI Center advised the officer that they would not conduct chemical testing of Licensee due to the blood-sugar issue. Nonetheless, the officer read Licensee the implied consent warnings from the DL-26 form and recorded a refusal when Licensee declined to submit to chemical testing of his blood. (December 29, 2017, Trial Court Opinion "Op." at 1-2.) Thereafter, the officer as a precautionary measure transported Licensee to the hospital instead of his hotel in light of his complaints that his blood-sugar level still felt off. After the officer departed, Licensee submitted to some testing unrelated to the DUI charges at the hospital. Upon receipt of the Department's notice imposing a one-year suspension of his operating privilege, Licensee appealed to the trial court.

---

by the police officer, the department shall suspend the operating privilege of the person as follows:

    (i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa.C.S. § 1547(b)(1)(i).

[2] Counsel stipulated that Licensee was arrested for suspected DUI. (November 9, 2017, Hearing, Notes of Testimony "N.T." at 5; Reproduced Record "R.R." at 18a.) However, maintaining that certain parts of the police officer's reasonable grounds for initiating the traffic stop were pertinent, counsel for the Department elicited undisputed testimony from the officer that Licensee's portable breath test yielded a .18% blood-alcohol reading. (N.T. at 9; R.R. at 22a.)

At the *de novo* hearing, the Department presented the testimony of the police officer and Commonwealth Exhibit A, which, *inter alia*, included the notice of suspension and the DL-26 form. Once the Department rested, Licensee declined to put on a defense. The trial court denied Licensee's statutory appeal, stating: "[A]fter receiving a warning that refusal to submit to the blood test would result in a suspension of his driver's license, [Licensee] refused anyway." (Op. at 2.) In addition, it concluded that Licensee failed to establish an affirmative defense that a medical condition prevented him from submitting to a blood draw, reasoning: "[A]lthough [Licensee] asserted that he was diabetic and suffering from high blood sugar, he failed to provide the requisite medical evidence to establish that he was physically unable to submit to a blood test." (Op. at 3.) Licensee's timely appeal to this Court followed.

On appeal, we consider whether Licensee refused to submit to chemical testing of his blood and whether the officer's implied consent warnings setting forth the civil penalties for refusal were adequate. A prima facie case for sustaining the suspension of a licensee's operating privilege requires the Department to prove, in relevant part, that a licensee refused to submit to chemical testing and that he or she was specifically warned that refusal would result in the suspension of his or her operating privilege. *Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010). Whether a licensee's conduct constitutes a refusal is a question of law. *McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013).

Once the Department meets its burden of establishing a refusal, the burden shifts to the licensee to prove that there was not a conscious and knowing refusal. *Dep't of Transp., Bureau of Driver Licensing v. Scott*, 684 A.2d 539 (Pa.

3

1996). In order to meet that burden, medical testimony is generally required. *Kollar*, 7 A.3d at 340. Where a licensee cites medical reasons for failing to submit to testing, a medical expert must rule out alcohol as a contributing factor to the licensee's alleged inability to render a knowing and conscious refusal. *Id.* If the licensee's inability to render a knowing and conscious refusal is caused, in whole or in part, by the consumption of alcohol, he or she is precluded from meeting that burden as a matter of law. *Id.* The question of whether a licensee's decision to refuse to submit to chemical testing was knowing and conscious is a question of fact for the trial court. *Id.*

In the present matter, Licensee declined to put on a defense. Consequently, he is relying on the Department's evidence to make his case. To that end, he argues that he could not have refused to submit to testing due to the refusal of the DUI Center to conduct a blood draw based on his blood-sugar issue and his subsequent blood test at the hospital. Further, he maintains that his alleged signature on the DL-26 form does not constitute a refusal because the DUI Center's decision negated any meaningful opportunity for him to submit to a blood test. In that regard, he alleges that he only signed the DL-26 form after learning that the DUI Center would not have done the blood draw anyway.

As an initial matter, the DUI Center's decision not to perform a blood draw does not mean that the police officer could not validly request that Licensee submit to a chemical test of his blood and elicit a valid refusal at the DUI Center. A valid request to submit to chemical testing is not required to be made at the site where the testing equipment is present. *Sitoski v. Dep't of Transp., Bureau of Driver Licensing*, 11 A.3d 12, 15 n.8 (Pa. Cmwlth. 2010). Had Licensee consented to the test at the DUI Center, the police officer could have taken him to the hospital as both

4

a precautionary measure and for a Section 1547 blood draw. In addition, the DUI Center's decision not to process Licensee was not tantamount to competent medical evidence that he was physically unable to take the test due to a medical condition or that alcohol consumption did not cause or contribute to his alleged inability to render a knowing and conscious refusal. Notably, after first complaining of a blood-sugar issue, Licensee refused to go to the hospital with the ambulance crew. In addition, the only evidence addressing the combination of Licensee's alcohol consumption and blood-sugar level was the police officer's testimony that, following the events at the DUI Center, Licensee was transported to the hospital rather than his hotel because he "was intoxicated and he felt like his blood was off." (N.T. at 12; R.R. at 25a.)

Moreover, as for Licensee's contention in his brief that he only signed the DL-26 form after learning that the DUI Center would not have done the blood draw anyway, the only evidence as to whether Licensee had knowledge of the DUI Center's decision is the police officer's testimony that Licensee was in the common lobby area when staff shared its decision, and the officer testified that he did not know whether Licensee overheard the conversation. (N.T. at 13-14; R.R. at 26-27a.) In addition, the form submitted into evidence bears only the police officer's signature indicating that the officer read the warnings and that the operator refused to sign after being advised of the consequences of a refusal. (Commonwealth Exhibit A at #2; R.R. at 38a.) Accordingly, Licensee's assertions in his appellate brief that he overheard that conversation and that it went into his decision-making are outside of the record and must be disregarded. *See Grever v. Unemployment Comp. Bd. of Review*, 989 A.2d 400, 402 (Pa. Cmwlth. 2010).

Additionally, the fact that the hospital drew blood from Licensee does not vitiate his refusal to submit when requested by the arresting officer. *Dep't of Transp., Bureau of Driver Licensing v. Wroblewski*, 442 A.2d 407, 408 (Pa. Cmwlth. 1982). Even if the officer had been present when this was done, a police officer is under no obligation to offer a licensee a second opportunity to submit to chemical testing. *Lutz v. Dep't of Transp., Bureau of Driver Licensing*, 734 A.2d 478 (Pa. Cmwlth. 1999).

We turn now to Licensee's argument that the police officer's implied consent warnings setting forth the civil penalties for refusal were inadequate because the officer did not advise him that he might be subject to enhanced criminal penalties if he refused the officer's request for a blood test. This argument was resolved in *Garlick v. Department of Transportation, Bureau of Driver Licensing*, 176 A.3d 1030, 1037 (Pa. Cmwlth. 2018) (*en banc*), wherein we stated: "[l]icensee's argument that his license must be reinstated because he was not warned that he would be subject to no longer constitutionally permissible enhanced criminal penalties for refusing blood testing is unpersuasive."[3] In addition, "the DL-26 form read to [Licensee] clearly stated that refusal to submit to a blood test [would] result in the suspension of operating privileges for at least 12 months." (Op. at 3.) Accordingly, where, as here, the officer specifically and accurately warned Licensee

---

[3] By way of background, the Supreme Court in *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160 (2016), held that an individual's Fourth Amendment right to be free from unreasonable searches and seizures was implicated when he was subject to criminal penalties for refusing to submit to a warrantless request for a blood test following a DUI arrest. To that end, a state may not impose criminal penalties on a motorist for refusing a blood test requested under an implied consent law. In response, the General Assembly amended Sections 1547(b)(2)(ii) and 3804(c) of the Code to clarify that enhanced criminal penalties could be imposed only for refusing to submit to "chemical breath testing," not blood testing. Sections 3 and 4 of the Act of July 20, 2017, P.L. 333. Section 3804(c) now provides that a licensee's punishment may be enhanced for refusing testing of his blood "pursuant to a valid search warrant." 75 Pa.C.S. § 3804(c).

about the consequences of refusing a blood test, Licensee's argument is without merit. *Garlick*, 176 A.3d at 1037-38.

In summary, the DUI Center's decision not to process Licensee did not nullify his refusal or constitute competent medical evidence that he was unable to make a knowing and conscious refusal. Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Satinder Pal Singh, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 133 C.D. 2018 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

# **O R D E R**

AND NOW, this 22nd day of January, 2019, the order of the Court of Common Pleas of Northampton County is hereby AFFIRMED.

 

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge