IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bryan Rodas                      :
                                    :
        v.                   :
                                      :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing,      :   No. 1372 C.D. 2022
              Appellant    :   Submitted:  October 10, 2023

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON            FILED: November 17, 2023

        The Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT), appeals from the order entered October 25, 2022 (Trial Court Order) by the Court of Common Pleas of Dauphin County (Trial Court) sustaining Bryan Rodas's (Licensee) statutory appeal from a 12-month operating privilege suspension imposed by DOT, under the Vehicle Code, what is commonly known as the Implied Consent Law, 75 Pa.C.S. § 1547(b) (Implied Consent Law), as a result of Licensee's refusal to submit to chemical testing upon his arrest for driving under the influence of alcohol or a controlled substance[1] (DUI).  Upon review, we reverse.

_____

[1] 75 Pa. C.S. § 3802.

The Pennsylvania State Police arrested Licensee on suspicion of DUI on October 31, 2021. Thereafter, by letter dated November 5, 2021, DOT notified Licensee that his operating privilege would be suspended for a period of 12 months effective December 17, 2021, as a result of his refusal to submit to chemical testing at the time of his arrest. *See* DOT Letter dated Nov. 5, 2021, Reproduced Record (R.R.) at 55a-58a. On December 13, 2021, Licensee appealed the suspension to the Trial Court.[2] *See* Trial Court Docket at 2, R.R. at 2a; Statutory Appeal, R.R. at 7a-8a.

The Trial Court conducted a hearing on Licensee's appeal on September 27, 2022. *See* Notes of Testimony, September 27, 2022 (N.T.), R.R. at 29a-63a. At the hearing, Pennsylvania State Trooper Bryce Corman testified on behalf of DOT and explained the following. *See* N.T. at 4-13, R.R. at 32a-41a. In the early morning hours of October 31, 2021, Trooper Corman was on routine patrol on Pennsylvania Route 283 Eastbound in Lower Swatara Township when he observed a black sedan that was travelling 45 miles per hour (m.p.h.) in the 65-m.p.h. zone and swerving over the center line of the road. *See* N.T. at 5-6, R.R. at 33a-34a. Trooper Corman activated his emergency lights and sirens and conducted a traffic stop of the vehicle. *See* N.T. at 6, R.R. at 34a. The driver, Licensee, was the sole occupant of the vehicle. *See* N.T. at 6-7, R.R. at 34a-35a. Upon approaching the vehicle, Trooper Corman immediately smelled a strong odor of alcohol coming from Licensee's person. *See* N.T. at 7, R.R. at 35a. Trooper Corman also observed vomit on Licensee's person, on the seatbelt, and in the car. *See* N.T. at 7-8, R.R. at 35a-

---

[2] The Trial Court stayed the license suspension pending the final decision of the Trial Court on Licensee's statutory appeal. *See* Trial Court's Scheduling and Supersedeas Order dated December 15, 2021, Reproduced Record (R.R.) at 15a; *see also* 75 Pa.C.S. § 1550(b).

36a. Trooper Corman requested Licensee to exit the vehicle and perform multiple field sobriety tests,[3] which Licensee accordingly did. *See* N.T. at 8, R.R. at 36a. Licensee's performance of the field sobriety tests caused Trooper Corman to believe that Licensee was under the influence of alcohol, and he placed Licensee under arrest on suspicion of DUI. *See* N.T. at 8, R.R. at 36a.

Once Licensee was secured in the rear of the patrol vehicle, at 2:43 a.m., Trooper Corman read Licensee the four blood testing warnings contained in DOT's DL-26B consent to blood test form[4] verbatim and in their entirety. *See* N.T. at 8 & 10-11, R.R. at 36a & 38a-39a. Licensee verbally consented to the blood draw

---

[3] Trooper Corman administered the horizontal nystagmus test followed by the walk-and-turn test and the one-leg-stand test. *See* Notes of Testimony 9/27/2022 (N.T.) at 8, R.R. at 36a.

[4] The DL-26B form's blood testing warnings read as follows:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

DL-26B Form, R.R. at 59a; *see also* N.T. 10-11, R.R. at 38a-39a.

at that time. *See* N.T. at 8; R.R. at 36a. Trooper Corman then transported Licensee to the Dauphin County Booking Center (Booking Center) for processing, during which transport Licensee was afforded the opportunity to review and read the DL-26B form to himself. *See* N.T. at 9 & 11, R.R. at 37a & 39a.

Once at the Booking Center, Trooper Corman again provided Licensee with the DL-26B form to read. *See* N.T. at 11; R.R. at 39a. Licensee signed the DL-26B Form at 3:41 a.m., but then ultimately verbally refused to participate in the blood draw. *See* N.T. at 9-11, R.R. at 37a-39a.[5]

Licensee also testified before the Trial Court. *See* N.T. at 13-21; R.R. at 41a-49a. Licensee readily conceded that he was considerably intoxicated on the evening in question. *See* N.T. at 14 & 17-18, R.R. at 42a & 45a-46a. He explained that he readily consented to and took multiple breathalyzer tests, and that he also consented to the requested blood draw. *See* N.T. at 14, R.R. at 42a. Licensee testified that he remembered sleeping in the back seat of the police car and then driving to the police station. *See* N.T. at 14, R.R. at 42a. Although he remembered Trooper Corman speaking to him during the drive, Licensee was unsure whether he acknowledged anything at that time. *See* N.T. at 14-15, R.R. at 42a-43a.

Once at the Booking Center, Licensee fell asleep multiple times and needed to be awakened. *See* N.T. at 15-16 & 18, R.R. at 43a-44a & 46a. Licensee recalled someone bringing a piece of paper for his signature and that Licensee was told to sign it. *See* N.T. at 15 & 18, R.R. at 43a & 46a. Licensee remembered signing the paper, but stated that it was not explained to him and he thought it was a form indicating his consent for the blood draw. *See* N.T. at 15-16 & 17-18, R.R. at 43a-

---

[5] Trooper Corman explained Licensee's refusal thusly: "He related something to the effect as [sic] no, I'm not – I'm not giving blood or no, I'm not doing that. I can't exactly recall his verbatim verbiage[,] but he did refuse." N.T. at 11, R.R. at 39a.

44a & 45a-46a. Licensee stated that he understood that the consequence of refusal to consent to the blood draw was an automatic one-year license suspension, and that such a significant consequence would have prevented him from refusing, considering his familial and employment obligations.[6] *See* N.T. at 14-15 & 17-19, R.R. at 42a-43a & 45a-47a. Licensee did not recall refusing the blood draw after having signed the form. *See* N.T. at 15 & 17-18, R.R. at 43a & 45a-46a. Instead, he remembers only being awakened from sleep to sign the form handed to him, falling back to sleep, and then being awoken again and told that someone had arrived to pick him up from the station. *See* N.T. at 18, R.R. at 46a. Licensee also testified that, although intoxicated, he was mentally aware and understood the situation that was occurring around him. *See* N.T. at 19, R.R. at 47a.

At the end of the hearing, the Trial Court stated, "[w]ell, I have no problem with the credibility of both witnesses. As a matter of fact, I thought they were both very credible. But somewhere along the line there's a misunderstanding." N.T. at 24; R.R. at 52a. The Trial Court later sustained Licensee's statutory appeal by order entered on October 25, 2022. *See* R.R. at 2a; 64a. DOT timely appealed the Trial Court Order to this Court.[7] *See* R.R. at 2a; *see also* Notice of Appeal R.R. at 65a-72a.

---

[6] Licensee testified that he has joint custody over his two young children and needs his license to take the children to school and extracurricular activities. *See* N.T. at 15-16, R.R. at 43a-44a. He further explained that he is the main source of financial support for his children, which financial support relies on his job in the auto industry that requires him to drive over 50,000 miles a year. *See* N.T. at 15-16, R.R. at 43a-44a.

[7] We acknowledge that the DOT did not file its appeal until 35 days after the date the Trial Court signed the Trial Court Order sustaining Licensee's appeal. However, while the Trial Court Order was dated October 24, 2022, it was not distributed to the parties until the following day, October 25, 2022. The 30th and final day for DOT to appeal therefore fell on Thursday, November 24, 2022, Thanksgiving Day, which was a Court holiday. The day after Thanksgiving was also a

Before this Court,[8] DOT claims that the Trial Court erred by sustaining Licensee's statutory appeal. *See* DOT's Br. at 4, 10-20. Specifically, DOT argues that the evidence before the Trial Court illustrated that Licensee refused the police request for blood testing and further that Licensee failed to prove that he did not knowingly or consciously refuse. *See id.* We agree.

Initially, we note:

> To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)).

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). Our Supreme

---

Court holiday. Thus, DOT had until the following Monday, November 28, 2022, to timely file its appeal, on which date it did. *See* Pa.R.A.P. 108 & 903.

[8] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

6

Court has stated that "any response from a licensee that is anything less than an unqualified, unequivocal assent to submit to testing constitutes a refusal, subjecting the licensee to the one-year suspension." *Id.* (internal quotation marks and citation omitted); *see also Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018) (observing that "Pennsylvania courts have long and consistently held that anything less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto"). "Further, an explicit refusal is not required to find a licensee refused to consent to chemical testing; a licensee's conduct may constitute a refusal." *Factor*, 199 A.3d at 497 (internal quotation marks omitted).

Moreover, "[t]he determination of whether a licensee was able to make a knowing and conscious refusal is a factual one that is to be made by the trial court." *Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 340 (Pa. Cmwlth. 2010) (citing *Barbour v. Dep't of Trans., Bureau of Driver Licensing,* 732 A.2d 1157, 1160 (Pa. 1999)). "Such factual finding must be affirmed so long as sufficient evidence exists in the record to support the finding." *Id.* However, "[a] motorist's self-serving testimony that []he was incapable of providing a knowing and conscious refusal of a chemical test is insufficient to meet [his] burden of proving incapacity." *Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018); *see also Kollar*, 7 A.3d at 340 ("A driver's self-serving testimony that []he was incapable of providing a knowing and conscious refusal of chemical testing is insufficient to meet the licensee's burden of proof."). "Rather, a licensee's incapacity defense must be supported by competent medical evidence where []he suffers from no obvious disability." *Park*, 178 A.3d at 281; *see also Kollar*, 7 A.3d at 340 (noting that "[m]edical testimony is generally required in order

7

to establish a licensee was unable to provide a knowing and conscious refusal to submit to chemical testing"). Further,

> [t]he medical expert must rule out alcohol as a contributing factor to the licensee's inability to offer a knowing and conscious refusal in order to satisfy the licensee's burden. **Indeed, if the motorist's inability to make a knowing and conscious refusal of testing is caused in whole or in part by consumption of alcohol, the licensee is precluded from meeting [his] burden as a matter of law**.

*Kollar*, 7 A.3d at 340 (internal citations and footnote omitted) (emphasis provided).

No dispute exists in the instant matter as to three of the four elements DOT must meet to sustain Licensee's driver's license suspension: Licensee was arrested for drunken driving based on reasonable grounds to believe that he was driving under the influence, Trooper Corman clearly requested that Licensee submit to chemical testing, and, by reading the DL-26B form, Trooper Corman warned Licensee that his refusal to submit to chemical testing would result in a license suspension. DOT challenges only the Trial Court's conclusion that Licensee's refusal to submit to the requested blood draw was not knowing or conscious.

The Trial Court explained its decision to sustain Licensee's statutory appeal thusly:

> Based on the facts of this case, this [c]ourt is not satisfied that [Licensee's] alleged refusal was conscious and knowing. Immediately after [Trooper] Corman initially read [Licensee] his rights, [Licensee], who was conscious and awake, stated that he would consent to a blood draw. He was taken to the Booking Center, where he fell asleep, and at some point woke up and was given a piece of paper to sign. [Licensee] signed the form, but there was no further explanation of the form, and according to

8

[Licensee], he thought he was signing the form to consent to a blood test. Moreover, [Licensee] testified that after he signed the form, he fell asleep while he thought he was waiting for a blood test and then was awakened at a later time to be taken home from the Booking Center. [Licensee] also testified that he specifically had no desire to lose his license and there was no way that he would have refused a blood test and risked losing his license. Considering [Licensee's] initial consent to the blood test, his subsequent compelling and credible testimony that he thought he was signing a form to consent to a blood test, and his statement that he would never have refused a blood test and risked losing his license, this [c]ourt found that [Licensee's] alleged refusal, which was alleged to have happened after he had previously consented to a blood test, was not knowing and conscious.

Trial Court Memorandum Opinion dated Jan. 30, 2023 (Trial Court Opinion) at 6-7, R.R. at 86a-87a. Thus, the Trial Court accepted that Licensee refused to consent to the blood draw, but found that the combination of Licensee's initial consent, his testimony that he thought by signing the DL-26B form he was consenting to the blood draw, and his statements that he would never have risked losing his license by refusing the blood test adequate to render his consent not knowing and conscious. We cannot agree that the evidence in this matter warranted such a determination by the Trial Court.

The evidence presented before the Trial Court illustrated that Licensee refused to consent to the requested blood draw, in that he failed to provide an unqualified, unequivocal assent to submit to chemical testing. On the contrary, Trooper Corman unambiguously testified that, despite initially consenting to the blood draw and receiving the refusal warnings from the DL-26B form, Licensee expressly verbally informed Trooper Corman at the Booking Center that he did not

9

intend to consent to the blood draw. *See* N.T. at 11, R.R. at 39a. Trooper Corman noted Licensee's refusal on the affidavit portion of the DL-26B form. *See* DL-26B Form, Affidavit, R.R. at 59a. The Trial Court described Trooper Corman's testimony as "very credible." N.T. at 24; R.R. at 52a. Thus, the DOT met its evidentiary burden to sustain Licensee's license suspension.

As a result, the burden shifted to Licensee to establish that he either was not capable of making a knowing and conscious refusal or was physically unable to take the test. Licensee conceded throughout his testimony that he was considerably intoxicated on the evening of his arrest. He explained that he fell asleep multiple times both at the scene of his arrest and repeatedly thereafter at the Booking Center. Licensee testified that he did not remember refusing. Licensee had no obvious injury and presented no medical evidence stating that he was incapable of knowingly or consciously refusing a request to consent to a blood draw. Licensee offered no explanation beyond his intoxication to explain the events of the evening. Thus, the only evidence of causation for Licensee's refusal links that causation to his consumption of alcohol. As explained above, such evidence is precluded as a matter of law from meeting Licensee's burden to prove that he was incapable of making a knowing and conscious refusal of testing. *See Kollar*, 7 A.3d at 340. Accordingly, the Trial Court erred as a matter of law by determining that Licensee's refusal was not knowing and conscious.[9] *See Park*; *Kollar*. The Trial Court therefore erred by sustaining Licensee's statutory appeal of his 12-month license suspension.

---

[9] To the extent Licensee argues that he did not refuse the blood test in the first place, and that he thought he was signing a consent to draw blood, we observe that such convenient and self-serving arguments are completely contrary to Trooper Corman's testimony, which the Trial Court credited. Such suggestions are also further belied by Licensee's own repeated insistence that, although intoxicated, he understood the situation that was occurring around him. *See* N.T. at 14-15 & 17-19, R.R. at 42a-43a & 45a-47a.

Accordingly, we reverse the Trial Court Order.


_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bryan Rodas                                          :
                                                     :
             v.                                      :
                                                     :
Commonwealth of Pennsylvania,                        :
Department of Transportation,                        :
Bureau of Driver Licensing,                          :    No. 1372 C.D. 2022
                         Appellant                   :

## O R D E R

AND NOW, this 17th day of November. 2023, the order entered October 25, 2022 by the Court of Common Pleas of Dauphin County is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge