IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Paul Franklin Curry, | : | |
| Appellant | : | |
| | : | No. 9 C.D. 2023 |
| v. | : | |
| | : | Submitted: May 23, 2024 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE McCULLOUGH                    FILED: July 1, 2024

Paul Franklin Curry (Licensee) appeals from the order entered December 5, 2022, in the Court of Common Pleas of Erie County (trial court) denying Licensee's statutory appeal from a one-year suspension of his driving privileges. The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDOT) imposed the suspension pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i), which is part of what is commonly known as the Implied Consent Law,[1] due to Licensee's refusal to submit to chemical testing

---

[1] The Implied Consent Law provides, in pertinent part, as follows:

**(a) General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection 1543(b)(1.1)[, 75 Pa.C.S. § 1543(b)(1.1)] (relating to driving while operating privilege is suspended or revoked), 3802[, 75 Pa.C.S. § 3802] (relating to driving under influence of

**(Footnote continued on next page…)**

after his arrest for driving under the influence of alcohol or a controlled substance (DUI). Upon review, we affirm.

## I.     FACTS AND PROCEDURAL POSTURE

On August 1, 2022, PennDOT sent Licensee an official notice of the suspension of his driving privileges effective September 5, 2022 (Notice of Suspension). (Reproduced Record (R.R.) at 27a-30a.) Licensee filed a statutory appeal to the trial court, which held a *de novo* hearing on November 30, 2022. The trial court's findings, supplemented with relevant evidence from the hearing, can be summarized as follows.

On July 16, 2022, Officer Jacob Kindle (Officer Kindle) of the Millcreek Township Police Department observed a vehicle make a left-hand turn from West 8th Street onto Peninsula Drive in Millcreek Township, Erie County, Pennsylvania. The vehicle did not utilize a turn signal, drove into the oncoming lane of traffic, changed lanes without using a turn signal, and thereafter weaved in and out of its lane. Based on his observations, Officer Kindle conducted a traffic stop. Upon approaching the vehicle, Officer Kindle identified Licensee as the driver via his Pennsylvania driver's license. During their interaction, Officer Kindle observed that Licensee's eyes were

---

alcohol or controlled substance)[,] or 3808(a)(2)[, 75 Pa.C.S. § 3808(a)(2)] (relating to illegally operating a motor vehicle not equipped with ignition interlock).

**(b) Civil penalties for refusal.--**

(1) If any person placed under arrest for a violation of [S]ection 3802[, 75 Pa.C.S. § 3802,] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [PennDOT] shall suspend the operating privilege of the person as follows:

(i) [F]or a period of 12 months.

75 Pa.C.S. § 1547(a), (b)(1)(i).

2

bloodshot and glassy, his speech was somewhat slurred, and an odor of an alcohol was emanating from his vehicle. Officer Kindle asked Licensee whether he had anything to drink, and Licensee responded that he had a drink at a bar in Millcreek Township prior to driving.

Officer Kindle then had Licensee exit his vehicle to perform standard field sobriety tests (SFSTs). Officer Kindle administered the Horizontal Gaze Nystagmus (HGN), walk-and-turn, and one-leg stand tests in a nearby parking lot located across a grassy embankment with trees on it. At the time of the stop, Officer Kindle had been a police officer for one year and nine months and was certified in field sobriety testing and Advanced Roadside Impaired Driving Enforcement (ARIDE). The results of the HGN test were inconclusive because Licensee was unable to follow instructions. Licensee's performance on the walk-and-turn and one-leg stand tests indicated to Officer Kindle several clues of impairment. Licensee also was administered a preliminary breath test (PBT), which indicated the presence of alcohol. *Id.* at 20a. Licensee testified that he had a handicap placard displayed in his vehicle and told Officer Kindle that he had balance issues for which he had received rehabilitation therapy. Officer Kindle recalled Licensee mentioning his balance issues, but did not see a placard in Licensee's vehicle and did not recall Licensee mentioning the therapy.

Officer Kindle took Licensee into custody for suspicion of DUI, placed him in handcuffs, and transported him to Millcreek Community Hospital. Licensee told Officer Kindle on the way to the hospital in the police vehicle that the handcuffs were excessively tight, but Officer Kindle did not respond. When they arrived at the hospital, Officer Kindle removed the handcuffs and accompanied Licensee inside. Licensee took pictures of the injuries to his wrists with his mobile phone, after which Officer Kindle confiscated the phone. At the *de novo* hearing, Licensee's counsel

3

attempted to introduce the photographs into evidence, to which PennDOT's counsel objected. The trial court sustained the objection, but permitted Licensee to testify that he was in pain in the hospital because of his wrists. Specifically, Licensee testified that, due to poison oak he had on his wrists at the time, the handcuffs cut into his skin and caused wounds that required medical treatment. Licensee also testified that his shoulders were aching from having had his arms behind his back in handcuffs.

Officer Kindle then read aloud to Licensee the implied consent warnings on PennDOT's DL-26B form[2] and requested that Licensee submit to chemical testing of his blood. Licensee testified that when Officer Kindle began reading the warnings in the DL-26B form, "[Licensee] was paying absolutely no attention to it." (R.R. at 24a.) Licensee testified that his sole focus was on the wounds on his wrists. Licensee also testified that, due to his hearing loss, he really did not know what Officer Kindle was saying. He nevertheless did not ask Officer Kindle to read him the warnings a second time, and did not tell Officer Kindle about his hearing loss. After Officer Kindle

---

[2] Officer Kindle read to Licensee the following warnings from the DL-26B form:

**It is my duty as a police officer to inform you of the following:**

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

(R.R. at 35a.)

4

finished reading the warnings, Licensee indicated that he would not consent to the testing and refused the blood draw. Licensee then testified at the *de novo* hearing that, if he had known that a refusal would cause him to lose his license, he would have agreed to the test. He also stated that, because of his preoccupation with his wrists, he did not feel like he made a conscious decision.

On December 5, 2022, the trial court entered an order dismissing Licensee's appeal. *Id.* at 9a. Licensee timely appealed to this Court, after which the trial court ordered the filing of a Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(b) Concise Statement of Errors Complained of on Appeal (Concise Statement).[3] Licensee timely filed a Concise Statement on February 1, 2023, in which he asserted the following errors: (1) the Commonwealth failed to establish that Officer Kindle had reasonable suspicion or probable cause to stop Licensee's vehicle; (2) Officer Kindle did not have probable cause to detain Licensee to perform SFSTs; (3) Officer Kindle did not have reasonable grounds to place Licensee under arrest and request chemical testing; (4) the trial court improperly denied Licensee the opportunity to present evidence of his various medical conditions and how they impacted his decision to refuse chemical testing; and (5) Officer Kindle erred in refusing to allow Licensee to read the DL-26B form warnings himself.

In its Pa.R.A.P. 1925(a) Opinion (Trial Ct. Op.), the trial court concluded that its findings were supported by sufficient evidence in the record and were free of legal error. (Trial Ct. Op. at 10.) Specifically, the trial court conclude that (1) the stop of Licensee's vehicle was supported by Licensee's failure to utilize his turn signal; (2)

---

[3] The trial court's order directing the filing of a Concise Statement is not included in the Reproduced Record, but is included in the Original Record (O.R.) from the trial court. The order was entered on January 11, 2023, and advised Licensee that "any issue not properly included in a timely filed and served [C]oncise [S]tatement shall be deemed waived." (Order, 1/11/23; O.R. Document No. 13.)

Officer Kindle had adequate suspicion of DUI to request that Licensee submit to SFSTs; (3) Officer Kindle had reasonable grounds to place Licensee under arrest, based in part on the results of the SFSTs; (4) Licensee was not suffering from any obvious incapacitating disability that prevented him from making a knowing and conscious decision and failed to introduce any competent medical evidence of any such disability; and (5) Licensee had no right to read for himself the implied consent warnings on the DL-26B form and, in any event, did not request to do so. (Trial Ct. Op. at 6-10.)

## II.    QUESTIONS PRESENTED

Licensee presents the following two questions for our review: (1) whether the trial court erred in precluding Licensee from presenting evidence of his medical conditions and, relatedly, whether this preclusion caused the trial court to erroneously conclude that the SFSTs justified Licensee's arrest; and (2) whether the trial court erred in finding that Licensee knowingly and consciously refused to submit to chemical testing.

## III.    DISCUSSION[4]

### A.    General Implied Consent Principles

To support the suspension of a licensee's operating privilege under the Implied Consent Law, PennDOT has the burden to prove that the licensee (1) was arrested for DUI by a police officer who had "reasonable grounds to believe" that the licensee was operating or in actual physical control of the movement of a vehicle while under the influence of alcohol or a controlled substance; (2) the licensee was asked to submit to a chemical test; (3) the licensee refused to do so; and (4) the licensee

---

[4] Our review in license suspension appeals is limited to determining whether the trial court committed an error of law or an abuse of discretion and whether the trial court's findings are supported by substantial evidence. *Garlick v. Department of Transportation, Bureau of Driver Licensing*, 176 A.3d 1030, 1035 n.6 (Pa. Cmwlth. 2018) (*en banc*) (citation omitted).

6

specifically was warned that a refusal would result in the suspension of his operating privilege. *See Jackson v. Department of Transportation, Bureau of Driver Licensing*, 191 A.2d 931, 932 (Pa. Cmwlth. 2018) (*en banc*). After PennDOT meets this burden, the burden of proof then shifts to the licensee to prove that he (1) was not capable of making a knowing and conscious refusal; or (2) was physically incapable of performing the chemical test. *Giannopoulos v. Department of Transportation, Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013).

### B. Evidence of Licensee's Medical Conditions/Reasonable Grounds

In his first issue, Licensee argues that the trial court erred (1) in precluding the introduction of "medical records" to corroborate Licensee's medical conditions and, resultantly, (2) in concluding that the results of Licensee's SFSTs justified his arrest. Before we reach the merits of this issue, we first must address PennDOT's argument that Licensee has waived it by failing to include it in his Concise Statement.

Where a trial court orders the filing of a Concise Statement, Pa.R.A.P. 1925(b)(4)(vii) provides that any "issues not included in the [Concise] Statement . . . are waived." Thus, a party's failure to include an issue in its Concise Statement waives that issue on appeal. *Desher v. Southeastern Pennsylvania Transportation Authority*, 212 A.3d 1179, 1185 (Pa. Cmwlth. 2019). However, we recognize that "[e]ach error identified in the [Concise] Statement will be deemed to include every subsidiary issue which was raised in the trial court." Pa.R.A.P. 1925(b)(4)(v).

Pertinent here, Licensee asserted the following two errors in his Concise Statement:

> (3)  [Licensee's] arrest was illegal as the "results" of the [SFSTs] were at most inconclusive, [Licensee] had undergone a PBT test which was apparently inconclusive and therefore, [Licensee] was wrongfully forced to decide whether to undergo DL-26 [t]esting;

7

(4)    The [t]rial [c]ourt improperly denied [Licensee] the opportunity to present evidence of his various medical conditions and how they impacted h[i]s decision to refuse the DL-26 [b]lood testing[.]

(R.R. at 12a.) In his brief, however, Licensee argues that the trial court erred in precluding the introduction of medical records and that this ruling resulted in the trial court's erroneous finding *that the SFST results justified Licensee's arrest*. (Licensee Br. at 4, 7, 9-16.) This specific issue appears nowhere in the Concise Statement, which instead ties the medical records issue to Licensee's argument that he *did not knowingly and consciously refuse chemical testing*. Whether medical evidence is admissible to explain the results of SFSTs and whether it is admissible to explain incapacity to make a knowing and conscious decision regarding chemical testing are two very distinct issues, and one is not a subsidiary of the other.

Further, Licensee devotes many pages of his brief on this question arguing for the general development of SFSTs for the aged population and contends that the SFSTs administered by Officer Kindle both failed to provide Licensee with a reasonable accommodation and violated his rights to due process and equal protection. (Licensee's Br. at 10-16.) Those issues are a far cry from those presented in the Concise Statement, and we agree with PennDOT that Licensee has waived them on appeal.

However, even if this issue were not waived, it is meritless for at least two reasons. First, as to the evidentiary aspect of the issue, Licensee never introduced or even mentioned the introduction of any medical records of any of his purported conditions. Although Licensee's counsel sought to introduce photos of Licensee's wrists taken at the hospital long after the SFSTs had been completed, *see* R.R. at 23a, nowhere are any medical records from Licensee's rehabilitation therapy, treating

8

physician, or purported hospital visits mentioned in the record. The trial court clearly did not err in not permitting the introduction of (and not considering) medical evidence with which it was never presented. *See* Pa.R.E. 103(a)(2) (a party may claim error in a ruling to exclude evidence only if the party "informs the court of its substance by an offer of proof, unless the substance was apparent from the context").

Second, to the extent that Licensee asserts that, due to defects in the SFSTs, Officer Kindle did not have reasonable grounds to request that Licensee submit to chemical testing, we disagree. In *Yencha v. Department of Transportation, Bureau of Driver Licensing*, 187 A.3d 1038 (Pa. Cmwlth. 2018), we set forth the applicable standard for determining whether "reasonable grounds" existed to support the arrest of a licensee:

> The question of whether an officer had reasonable grounds to arrest a licensee is a question of law fully reviewable by this court on a case-by-case basis. The test for whether a police officer has reasonable grounds to believe that a licensee drove while intoxicated is not demanding; it requires even less proof than what is necessary to establish probable cause for a criminal prosecution. In assessing whether [Penn]DOT has met this burden, we consider the totality of the circumstances and determine, as a matter of law, whether a person in the position of the arresting officer could have reasonably reached this conclusion.
>
> An arresting officer need not prove that he was correct in his belief that the licensee was operating the vehicle while under the influence. Even if later evidence proves the officer's belief to be erroneous, this will not render the reasonable grounds void. Further, an officer need not witness the licensee operating a vehicle to place him under arrest for driving under the influence. Additionally, an officer's reasonable belief that the licensee was driving while under the influence will justify a request to submit to chemical testing if one reasonable interpretation of the circumstances as they appeared at the time supports the officer's belief.

9

Further, courts appropriately defer to an investigating officer's experience and observations where reasonable grounds exist to support the officer's belief based on the totality of the circumstances.

*Id.* at 1044-45 (internal citations and quotations omitted). Further,

[t]here is not a set list of behaviors that must be exhibited in order for an officer to have reasonable grounds. Our case law has identified factors that constitute reasonable grounds. They include: a licensee who staggers or sways; has slurred speech; exhibits uncooperative behavior; *or* emits an odor of alcohol. Where the arresting officer cites a driver's glassy eyes, there must be at least one other obvious physical sign of intoxication in order for the officer to have reasonable grounds for arrest.

*Farnack v. Department of Transportation, Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011) (internal citations omitted) (emphasis provided).

Regarding SFSTs specifically, although the results of such tests are *relevant* to the question of whether a police officer has reasonable grounds to place a person under arrest for the purposes of requesting chemical testing, the results are not necessarily *controlling* on that question, which is to be determined based on the totality of the circumstances. *See Nagle v. Department of Transportation*, *Bureau of Driver Licensing* (Pa. Cmwlth., No. 2035 C.D. 2007, filed August 12, 2008), slip op. at 6.[5] Accordingly, a licensee's passing of a standard field sobriety test will not negate the existence of reasonable grounds where they otherwise are established by the totality of the circumstances. *Id.*; *See also Department of Transportation, Bureau of Driver Licensing v. Harbaugh*, 595 A.2d 715, 718 (Pa. Cmwlth. 1991) (citing *Craze v.*

---

[5] We may cite for their persuasive value unreported decisions of this Court issued after January 15, 2008. Section 414(a) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code § 69.414(a).

*Department of Transportation*, 533 A.2d 519 (Pa. Cmwlth. 1987)) ("a police officer who has reasonable grounds to order a chemical test may do so, despite the fact that the driver has passed a field sobriety test prior to the chemical test").[6] Likewise, failed SFSTs are not necessary to establish reasonable grounds to believe that a licensee is operating a vehicle while under the influence. *Zweibel v. Department of Transportation, Bureau of Driver Licensing*, 832 A.2d 599, 605 (Pa. Cmwlth. 2003).

Here, Officer Kindle testified that Licensee's HGN test was inconclusive because Licensee could not or would not follow the instructions for the test. Officer Kindle further testified that he observed clues of impairment in Licensee's performance of both the walk-and-turn and one-leg stand tests. Other than telling Officer Kindle that he had "balance" issues, Licensee did not otherwise give Officer Kindle any reason why he could not perform the tests; nor did he offer at the *de novo* hearing any competent and corroborating medical evidence. We therefore agree with the trial court that the SFST results validly supported the finding that Officer Kindle had reasonable grounds to arrest Licensee for the purposes of requesting chemical testing.

Nevertheless, even assuming (without finding) that the SFSTs were defective, we conclude that all of the other circumstances presented to Officer Kindle provided reasonable grounds to request chemical testing. Officer Kindle testified that Licensee made a left-hand turn without utilizing his turn signal, crossed the oncoming lane of traffic, again failed to use his turn signal, and then weaved in and out of his traffic lane. After conducting the stop, Officer Kindle noted that Licensee had glassy, bloodshot eyes, slurred speech, and an odor of alcohol emanating from his vehicle.

---

[6] For example, in *Craze*, we concluded that an officer had reasonable grounds to request chemical testing where the licensee acted in a disorderly manner at the scene of an accident, had bloodshot eyes with dilated pupils, smelled of alcohol, and admitted to having had a single drink prior to driving. *Craze*, 533 A.2d at 520-21. We reached that conclusion notwithstanding the fact that the licensee had passed, "with difficulty," the heel-to-toe field sobriety test. *Id*.

11

Licensee admitted to drinking at a bar prior to driving. Officer Kindle also performed a PBT on Licensee, which indicated the presence of alcohol. Those facts, considered together, provided Officer Kindle with reasonable grounds to request chemical testing independent of the SFST results.[7]

For these reasons, and to the extent that Licensee's first issue is not waived, it is without merit.

### C.    Knowing and Conscious Refusal

Licensee argues secondly that he could not[8] knowingly and consciously refuse chemical testing because (1) he sustained physical injuries from the handcuffs placed on him after his arrest; (2) Officer Kindle exerted psychological intimidation when he took Licensee's mobile phone; and (3) the implied consent warnings given by Officer Kindle were deficient in that (a) Officer Kindle read them in a rushed and hurried way without further explanation, (b) Officer Kindle violated the Americans with Disabilities Act (ADA)[9] by failing to give Licensee a written copy of the warnings to read for himself, and (c) the warnings did not include any notice of the ignition interlock requirements in Section 3805 of the Vehicle Code, 75 Pa.C.S. § 3805.

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Department of Transportation, Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). "[A]ny

---

[7] We again note that the "reasonable grounds" standard under the Implied Consent Law is different from, and less exacting than, the "probable cause" standard applicable in the criminal context. We render no opinion regarding whether Officer Kindle had probable cause to arrest Licensee for criminal violations.

[8] Licensee does not argue that he *did not*, by his words or conduct, refuse the chemical testing. Rather, he contends that, for various reasons, he was incapable of *knowingly and consciously* doing so.

[9] 42 U.S.C. § 12101-12213.

response from a licensee that is anything less than an unqualified, unequivocal assent to submit to testing constitutes a refusal, subjecting the licensee to the one-year suspension." *Id.* An explicit refusal expressed in words is not necessary. *Factor v. Department of Transportation, Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018); *Bomba v. Department of Transportation, Bureau of Driver Licensing*, 28 A.3d 946, 949 (Pa. Cmwlth. 2011). Rather, a licensee's overall conduct demonstrating an unwillingness to assent to a request for chemical testing may constitute a refusal. *Nardone*, 130 A.3d at 749; *Factor*, 199 A.3d at 497.

The determination of whether a licensee was *capable* of making a knowing and conscious refusal to chemical testing is a factual one for the trial court. *Kollar v. Department of Transportation, Bureau of Driver Licensing*, 7 A.3d 336, 340 (Pa. Cmwlth. 2010). The trial court's finding in this regard must be affirmed on appeal if sufficient record evidence supports it. *Id.* A motorist's own self-serving testimony that he or she was not capable of providing a knowing and conscious refusal will not satisfy his or her burden to prove incapacity. *Park v. Department of Transportation, Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018); *Kollar*, 7 A.3d at 340. Rather, unless a licensee suffers from an obvious, incapacitating disability, the licensee must introduce competent and unequivocal medical evidence to establish incapacity, which evidence must rule out alcohol as a contributing factor. *Park*, 178 A.3d at 281; *Kollar*, 7 A.3d at 340.

Regarding the warnings that must be given prior to requesting chemical testing, licensees do not have a constitutional right to be warned of the consequences of refusing to submit to a chemical test. *Garlick*, 176 A.3d at 1035. There is only a statutory requirement. *See* 75 Pa.C.S. § 1547(b)(2)(i).[10] The purpose of the warnings

---

[10] Section 1547(b)(2)(i) provides:

**(Footnote continued on next page…)**

13

is to make a licensee aware of the consequences of a refusal to enable the licensee to make a knowing and conscious decision. *Garlick*, 176 A.3d at 1036.

First, regarding the injuries to Licensee's wrists, the trial court concluded that Licensee was not suffering from any "obvious disability" that would have alerted Officer Kindle that Licensee was incapable of making a knowing and conscious decision regarding chemical testing. (Trial Ct. Op. at 9.) We agree. Licensee indicated that the handcuffs were excessively tight and that he requested more than once that they be loosened. *See generally Walkden v. Department of Transportation, Bureau of Driver Licensing*, 103 A.3d 432, 441 (Pa. Cmwlth. 2014) (licensee's demand that handcuffs be removed prior to his consenting to chemical testing was not reasonable, and the decision to restrain the licensee in handcuffs was within the discretion of the arresting trooper). It is undisputed in the record that (1) Licensee made these requests when Officer Kindle was driving Licensee to the hospital, (2) Officer Kindle removed the handcuffs before Licensee went into the hospital, and (3) Licensee did not introduce or seek to introduce any *medical* evidence regarding the injuries or their effect on his mental capacity to make a knowing and conscious decision. Further, although the trial court precluded introduction of photographs that Licensee took of his wrists at the hospital, Licensee nevertheless testified at length that he was in pain and was "totally" consumed with looking at his wrists while Officer Kindle attempted to read him the DL-26B warnings. There is nothing obviously incapacitating about the injuries to Licensee's wrists caused by the handcuffs, and without competent and corroborating

---

(2) It shall be the duty of the police officer to inform the person that:
    (i) the person's operating privilege will be suspended upon refusal
    to submit to chemical testing and the person will be subject to a
    restoration fee of up to $2,000[.]

75 Pa.C.S. § 1547(b)(2)(i).

medical evidence, we agree with the trial court that Licensee did not carry his burden to prove that the injuries rendered him incapable of making a knowing and conscious decision. *See Ostermeyer v. Department of Transportation, Bureau of Driver Licensing*, 703 A.2d 1075, 1077-78 (Pa. Cmwlth. 1997) (licensee's self-serving testimony that he sustained head injuries from hitting the windshield of his car and was "fading in and out" and "confused" was insufficient, without medical evidence, to establish incapacity); *Department of Transportation, Bureau of Driver Licensing v. Garlan*, 550 A.2d 873 (Pa. Cmwlth. 1989) (licensee's testimony that he suffered from a concussion, corneal abrasion, and memory loss from auto accident was insufficient to establish incapacity without supporting medical evidence). *Compare Department of Transportation, Bureau of Traffic Safety v. Day*, 500 A.2d 214 (Pa. Cmwlth. 1985) (broken jaw, severe facial lacerations, broken arm, injured leg, and blows to the head were sufficiently obvious and severe to establish incapacity without supporting medical evidence), and *Department of Transportation, Bureau of Driver Licensing v. Groscost*, 596 A.2d 1217 (Pa. Cmwlth. 1991) (driver's injuries resulting from his vehicle's collision with a telephone pole and the driver's resulting contact with the vehicle's steering wheel and steering column, which required five-day hospital stay, were sufficiently obvious and severe to establish incapacity without additional medical testimony).

Likewise, Licensee failed to establish the impact of any "psychological intimidation" caused by Officer Kindle's confiscation, for a time, of Licensee's mobile phone. Whether the confiscation was appropriate is not before this Court. We consider only whether Licensee has carried his burden to establish that not having his mobile phone prior to hearing the implied consent warnings rendered him incapable of making a knowing and conscious decision. There is no obviously incapacitating injury

15

commensurate with the confiscation, and Licensee did not introduce any competent medical evidence on the issue. Thus, he has not carried his burden on this ground.

Third, with regard to the warnings read by Officer Kindle, we reiterate that it is undisputed in the record that Officer Kindle in fact read the DL-26B warnings to Licensee and that Licensee was not paying attention to Officer Kindle while he was reading the warnings because Licensee was preoccupied with his wrists. *See Walkden*, 103 A.3d at 440 (quoting *Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636, 641 n.7 (Pa. Cmwlth. 2006)) (police officers administering implied consent warnings are not required to "spend effort . . . cajoling the licensee"). Licensee also admitted that he did not tell Officer Kindle of his hearing loss and did not request that Officer Kindle read the warnings to him a second time. Licensee further concedes that he has no right to receive a written copy of the warnings prior to deciding whether to consent to or refuse the chemical testing. (Licensee Br. at 23.) *See Reed v. Department of Transportation, Bureau of Driver Licensing*, 25 A.3d 1308, 1311 (Pa. Cmwlth. 2011) (citing *Yoon v. Department of Transportation*, *Bureau of Driver Licensing*, 718 A.2d 386 (Pa. Cmwlth. 1998)) (implied consent warnings must be read to a licensee to be adequate, and providing a written copy of the DL-26B warnings to the licensee is inadequate as a matter of law). Thus, whatever difficulty that Licensee might have had in hearing the warnings, he has not established that such difficulty *in fact caused* any incapacity in this instance. Because he was not paying attention, did not advise Officer Kindle of any hearing problems, and did not introduce

16

any competent medical evidence of his hearing loss, he did not sustain his burden of proof to establish his incapacity in this regard.[11]

Lastly, we reject Licensee's argument that he should have been warned as to the ignition interlock requirements in Section 3805 of the Vehicle Code.[12] The implied consent warnings due to a licensee are of statutory, and not constitutional,

---

[11] Because Licensee did not establish with any competent evidence any disabling hearing loss, and because he did not advise Officer Kindle of the same, any purported claim he could have under the ADA is without merit.

[12] Section 3805 provides, in pertinent part:

> **(a) General rule.--**Except as provided under subsection (a.1), if a person violates [S]ection 3802 (relating to driving under influence of alcohol or controlled substance) or has had their operating privileges suspended pursuant to [S]ection 1547 (relating to chemical testing to determine amount of alcohol or controlled substance) . . . *and the person seeks a restoration of operating privileges, [PennDOT] shall require as a condition of issuing a restricted license pursuant to this section that the following occur*:
>
> > *(1) Any motor vehicle to be operated by the individual has been equipped with an ignition interlock system and remains so for the duration of the restricted license period.*
> >
> > (2) If there are no motor vehicles owned or to be operated by the person or registered to the person that the person so certify to the department in accordance with the department's regulations.
>
> **(a.1) Exception.--**Subsection (a) shall not apply to an individual who meets all of the following:
>
> > (1) Is subject to the penalties under section 3804(a)(1) (relating to penalties) or subject to mandatory suspension of operating privilege under section 3807(d) (relating to Accelerated Rehabilitative Disposition).
> >
> > (2) Has not had a prior offense, as defined under section 3806 (relating to prior offenses).

75 Pa.C.S. § 3805(a)(1), (2); (a.1)(1), (2) (emphasis provided).

17

origin. *Garlick.* Officer Kindle therefore was obligated only to read the warnings set forth in Section 1547(b)(2). There is no dispute that those warnings were given. Police officers have no duty to otherwise warn licensees about ignition interlock requirements or any number of other civil or administrative penalties or conditions imposed after a license suspension. Licensee accordingly is entitled to no relief on this issue.

## IV.    CONCLUSION

Because we conclude that the trial court's findings are supported by substantial evidence and that the trial court neither erred nor abused its discretion in denying Licensee's appeal, we affirm the trial court's order.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Franklin Curry,  :
             Appellant  :
               :  No.  9 C.D. 2023
        v.  :
               :
Commonwealth of Pennsylvania,  :
Department of Transportation,  :
Bureau of Driver Licensing  :

## *ORDER*

AND NOW, this 1st day of July, 2024, the December 5, 2022 order of the Court of Common Pleas of Erie County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge